UNITED STATES of America, Appellee,

v.

James MASSA, Appellant (Two Cases).

Nos. 85–2121, 86–2176.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1986.

Decided Oct. 30, 1986.

John W. Leskera, East St. Louis, Ill., for appellant.

Terry I. Adelman, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

On April 28, 1983, James Massa was convicted on a forty-three count indictment arising out of the massive swindle of the Stix & Company brokerage firm and was sentenced to twenty years in prison. This Court affirmed that conviction. *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984). Massa now appeals a decision of the district court denying his motion for a new trial on the basis of newly discovered evidence and denying his motion for reduction of sentence. The issues presented for review include whether the district court erred in denying a new trial: 1) on the basis of a psychiatrist's report; 2) on the basis of alleged evidence that prosecution witness Jerry Maeras committed perjury; 3) on the basis of the government's alleged suppression of evidence impeaching Maeras; and 4) on the basis of false and misleading inferences raised by the government during the trial. Massa also claims the district court abused its discretion in denying his motion for reduction of sentence and in denying his request for a hearing on both motions. For the reasons

set forth below, we affirm in part and remand for an evidentiary hearing.

## DISCUSSION

### I. Motion for New Trial

Five prerequisites must be met to justify the grant of a new trial on the basis of newly discovered evidence:

(1) the evidence must be in fact newly discovered, that is, discovered since the trial; 2) facts must be alleged from which the court may infer diligence on the part of the movant; 3) the evidence relied upon must not be merely cumulative or impeaching; 4) it must be material to the issues involved; and 5) it must be of such nature that on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Ventling*, 678 F.2d 63, 67 (8th Cir.1982) (citations omitted).

Moreover, "[t]he grant or denial of a motion for new trial based on newly discovered evidence is within the broad discretion of the trial court, and the trial court's decision will not be reversed absent a clear abuse of discretion." *United States v. Ward*, 544 F.2d 975, 977 (8th Cir.1976).

### A. *The Psychiatrist's Report*

Massa argues that psychiatric treatment, subsequent to trial, has revealed that he did not knowingly participate in the scheme to defraud Stix, and, therefore, he is entitled to a new trial. This argument is supported by an affidavit of Dr. R. Eugene Holeman which essentially states that because Massa idolized Brimberry, he lapsed into "magical thinking" which prevented him from seeing "the big picture," that is, from knowing that he and Brimberry were engaged in an embezzlement scheme:

The [noncriminal] explanation for his behavior lies in the compulsive part of his personality. * * * One compulsive symptom has been to escape into relationships with men whom he saw as stronger, smarter or wealthier than himself. He idealizes them and allows them to take advantage of him. He sees these individuals as bigger than life, as an answer to his chronic feelings of inadequa-

cy. To maintain this magical view his conscious mind does not see what is obvious to others about this kind of person. * * * In the therapy process we have seen a series of these relationships, beginning in adolescence and continuing into the relationship with Mr. Brimberry. Each had the same compulsive characteristic, but Mr. Massa was unable to see the "big picture". * * * The relationship with Mr. Brimberry was the most extreme of these relationships—following Brimberry's grandiosity, accepting his lies and distortions and ultimately meeting with his unconscious needs for self-destruction.

The district court determined that Holeman's affidavit did not entitle Massa to a new trial because "[t]he factual circumstances supporting Dr. Holeman's affidavit were certainly known to both defendant and his family well before the trial of this action," and, therefore, the court could not infer diligence on the part of the movant to discover this evidence before trial. We cannot agree with the court's reasoning on this point. Although the factual details underlying Holeman's affidavit were known to Massa prior to trial, he did not know that an expert would opine that those details of his life had so affected his mental state as to render him incapable of committing the crimes with which he was charged. Indeed, Holeman formed this opinion only after counseling Massa for over eighteen months.

Thus, the question becomes whether the jury probably would have acquitted Massa had it been privy to Holeman's report. We answer this question in the negative. As we noted in *United States v. Lewellyn*, 723 F.2d 615, 616 (8th Cir.1983), this Circuit has adopted the American Law Institute (ALI) insanity test:

(1) A defendant is insane * * * if, at the time of the alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or

to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include any abnormality manifested only by repeated criminal or otherwise antisocial conduct. Model Penal Code § 4.01 (Final Draft 1962).

*Id.* (citations omitted).

We are not convinced by Holeman's affidavit, and we do not think it could have convinced a jury that Massa lacked the capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the law.

Holeman describes Massa as a dependent person who seeks and finds comfort in relationships with strong men and then subordinates his desires and values to the wishes of the stronger man. While in no way intending to diminish Massa's psychological problems, we cannot see how a jury would excuse Massa based on this diagnosis. A dependent weak-willed personality is not unique to Massa, and it is certainly not an excuse for criminal behavior recognized by law.

There is, however, another aspect to this matter and that is whether the trial court might have given Massa a lesser sentence had he been aware of Massa's condition as defined in the psychiatric report and as further developed at a hearing.

The rule is that district courts need not always hold hearings on disputed matters of fact arising from post-trial motions. *United States v. Abou-Saada,* 785 F.2d 1, 6 (1st Cir.1986). Ordinarily, these motions are decided on the basis of affidavits without a hearing, although there may be exceptional circumstances in which an oral hearing should be granted. *United States v. Bednar,* 776 F.2d 236, 239 (8th Cir.1985).

We think that this case falls in that category as far as the sentence is concerned. We, therefore, remand to the district court with directions to that court to grant Massa a hearing in order to develop the psychiatric evidence. At that hearing, Holeman may be called as a witness to elaborate on his affidavit, and if Holeman does testify, the government should be given an opportunity to cross-examine him.

Thereafter, the district court should decide whether it will reduce Massa's sentence in light of the evidence established at the hearing. If an appeal is taken from the district court, it shall be referred to the panel in this case for final disposition.

### B. *Maeras's Perjured Testimony*

Massa contends that Maeras perjured himself at trial by testifying that he told Massa the money behind the A.E. Shaw loan was taken from Stix through Maeras Enterprises. According to Massa, the perjured testimony became evident six weeks after trial when Maeras testified in a deposition for a subsequent civil matter that he told Massa the source of the A.E. Shaw loan was Maeras Enterprises and did not indicate to Massa that the money came directly from Stix. It was in light of this perjured testimony, Massa contends, that the jury rejected his contention that he did not know that the money used in the various stock transactions was illegally obtained from Stix. Massa claims that this newly discovered evidence of perjured testimony requires a new trial.

In order to evaluate Massa's contention, we must examine Maeras's testimony at trial and at the subsequent deposition. At trial:

Q. Where did the money come from for these loans [to Stix from A.E. Shaw]?

A. The money came from Stix & Company through Mr. Brimberry, through Maeras Enterprises.

Q. Did you have any conversations where Mr. Brimberry and Mr. Massa were present, where it was discussed as to who was supplying the money?

A. There was meetings earlier, around the same period, that Mr. Brimberry was going to supply the money through Maeras Enterprises, from Stix and Company.

T. p. 41.

At deposition:

Q. Did you have any discussions with anyone about where the money was coming from or that it was coming from Stix & Co.?

A. Just Mr. Brimberry.

Q. Did you ever talk to Mr. Massa about that?

A. Did I ever talk to Mr. Massa about that?

Q. About where the money was coming from for the subordinated loan agreement?

A. Just the money was made, Thomas Brimberry made money through Maeras Enterprises. That's all. That the money was made out of Maeras Enterprises.

Q. You had that discussion with Mr. Massa?

MR. SHORT: What's that discussion?

Q. (By Mr. Moline) Did you ever have a discussion of any kind with Mr. Massa to the effect that the money used to finance the Alma E. Shaw subordinated loan was coming from Stix & Co. through Maeras Enterprises, and if you had any such discussions, first tell us when and then tell us the substance of it to the extent that you can recall that.

A. The only thing I can remember, I'm trying to remember, this money was made from Maeras Enterprises and cashier's checks—Mr. Brimberry told me to make out that James J. Massa and put remitter, A.E. Shaw, and take them up to Mr. Massa's office. That's all I remember.

Q. Did you have that kind of conversation with Mr. Massa though?

A. I'm trying to remember.

Q. Did you ever tell Mr. Massa anything to the effect that the money that was financing the A.E. Shaw subordinated loan was coming from Stix & Co.?

A. Just money being made from Maeras Enterprises.

Q. You told him that?

A. I can't say that for sure. I'm trying to remember. I just can't say that right now, sir.

Dep. T. p. 43–44.

On this evidence, the trial court determined that Maeras did not commit perjury during his testimony at trial. "Maeras's testimony at trial and in his civil deposition is basically consistent when viewed in its entirety."

■ In our view, Maeras's deposition testimony indicates that he could not remember whether he ever discussed the source of the Shaw loan with Massa. This testimony, demonstrating a lapse in memory from trial to deposition, could only be used to impeach Maeras. Newly discovered impeachment evidence ordinarily will not support the grant of a new trial. *United States v. Ventling*, 678 F.2d 63, 67 (8th Cir.1982). Further, Maeras's trial testimony, that Massa knew the money for the Shaw loan came from Stix, was cumulative to the testimony of Massa's Secretary, Joan Tosi. Such evidence, like impeachment evidence, is usually insufficient to support the grant of a new trial. *Id.* at 67.

### C. *Suppressed Evidence*

Massa contends that the government suppressed evidence which was both favorable and material to this case, and, therefore, under *United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), he is entitled to a new trial. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. *Id.* —— U.S. at ——, 105 S.Ct. at 3383–84, 87 L.Ed.2d at 494.

The allegedly suppressed evidence consists of information Nick Vasileff revealed to an FBI agent which arguably could have been used to impeach Maeras at trial. Maeras testified before a grand jury that Brimberry directed him not to cooperate with the government and apparently told Vasileff that Brimberry had directed him *to* cooperate with the government.

■ The trial court determined that Massa is not entitled to a new trial on this ground because the evidence is not such that it would probably produce an acquittal

at a new trial. We agree. The allegedly suppressed information that the FBI agent received from Brimberry is not a clear contradiction of Maeras' testimony before the grand jury: "Brimberry had made the statement to Maeras to 'tell it like it was,' or words to that effect. Maeras further advised Vasileff that Brimberry had stated that it was not necessary that Maeras make any statements to any investigators regarding any aspect of the Stix and Company investigation." (FBI agent's impressions after talking with Vasileff .2/16/83.) This information does not clearly impeach Maeras, thus we have doubts that it should have been turned over. Moreover, Maeras's testimony was significantly impeached during the trial; yet the defendant was found guilty by the jury. Thus, it is unlikely that additional impeachment evidence would produce an acquittal at a new trial. *United States v. Mackey*, 571 F.2d 376, 389 (7th Cir.1978); *See also United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

### D. *Governmental Misconduct at Trial*

■ Massa alleges four instances of governmental misconduct in the trial of this case, each offered as a basis for a new trial. First, Massa contends that it was improper to introduce evidence that Massa made illegal stock purchases in his secretary's name. This alleged instance of misconduct is not a proper basis for a new trial. The defendant requests a new trial on the basis of an argument relating to the admissibility of evidence at trial, whose admissibility he did not challenge on direct appeal. This is not newly discovered evidence.

■ Second, Massa alleges that, by allowing Maeras to testify to Massa's drafting of a joint-venture agreement between Maeras and Brimberry, the government allowed the jury to infer that Massa knew the money to be split was stolen. We agree that this inference could be drawn, but this is not a reason for rejecting the testimony.

■ Third, Massa claims the government entered into a false stipulation. stating that it would prosecute Brimberry and that the government did not call Brimberry as a witness because he would have testified to exculpatory evidence about Massa. The district court rejected this contention and further found that "the stipulation was entered into at the request of defendant and was effectively used to his advantage during the trial of this case." The district court's finding on this point is not clearly erroneous.

■ Finally, Massa claims the government presented misleading testimony by Joan Tosi that certain nursing home property was transferred to Tosi's name because of Brimberry's desire to hide the property from the IRS. The government contends that this inference was fair because other evidence in the case included numerous pieces of property held in false names in order to hide Brimberry's wealth from the IRS. We agree. Moreover, this evidence was known to Massa at trial and therefore is not newly discovered.

### II. Motion for Reduction of Sentence

Massa claims the district court abused its discretion in denying his motion to reduce his sentence. He argues that his sentence should be reduced because it is longer than sentences for similar offenses nationally and because it is longer than sentences for others convicted in the Stix conspiracy.

■ "A sentence within the statutory maximum which is 'greatly excessive under traditional concepts of justice' or 'manifestly disproportionate to the crime or criminal' is reviewable by federal appellate courts." *United States v. Hollis*, 718 F.2d 277, 279 (8th Cir.1983) (citations omitted). We do not believe that Massa's twenty year sentence meets either requirement. Although the sentence is a long one, longer than any brought to our attention for somewhat similar offenses, it can be justified by the amount involved in the fraud—$16 million—the huge profit realized by Massa—$2.5 million—and the fact that numerous small investors lost all or a part of their

life savings. The trial court shall, however, reconsider Massa's sentence in light of the psychiatric testimony developed at the hearing on remand. Affirmed in part and remanded for an evidentiary hearing.