UNITED STATES of America, Appellee,

v.

Richard H. LIEBO, Appellant.

No. 89–5621.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 15, 1990.

Decided Jan. 15, 1991.

Kevin Short, Minneapolis, Minn., for appellant.

Joseph C. Wyderko, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Richard H. Liebo appeals from his convictions for violating the bribery provisions of the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd–1(a)(1), (3); 78dd–2(a)(1), (3); 78dd–2(b)(1)(B) and 78ff(c)(2) (1988), and making a false statement to a government agency. 18 U.S.C. § 1001 (1988). The jury acquitted Liebo on seventeen other counts. Liebo argues that his convictions should be reversed because of insufficient evidence and because the district court erred in instructing the jury. He also argues that the district court abused its discretion by denying his motion for a new trial based on newly discovered evidence. We conclude that sufficient evidence existed to sustain the convictions and that the court properly instructed the jury, but reverse the district court's denial of Liebo's motion for a new trial because of newly discovered evidence. We remand for a new trial.

The background leading to Liebo's conviction has all the earmarks of a modern fable. Between January 1983 and June 1987, Liebo was vice-president in charge of the Aerospace division of NAPCO International, Inc., located in Hopkins, Minnesota. NAPCO's primary business consisted of selling military equipment and supplies throughout the world.

In early 1983, the Niger government contracted with a West German company, Dornier Reparaturwerft, to service two Lockheed C–130 cargo planes. After the Niger Ministry of Defense ran into financial troubles, Dornier sought an American parts supplier in order to qualify the Ministry of Defense for financing through the United States Foreign Military Sales program. The Foreign Military Sales program is supervised by the Defense Security Assistance Agency, an agency of the United States Department of Defense. Under the program, loans are provided to foreign governments for the purchase of military equipment and supplies from American contractors.

In June 1983, representatives from Dornier met with officials of NAPCO and agreed that NAPCO would become the prime contractor on the C–130 maintenance contracts. Under this arrangement, NAPCO would supply parts to Niger and Dornier, and Dornier would perform the required maintenance at its facilities in Munich.

Once NAPCO and Dornier agreed to these terms, Liebo and Axel Kurth, a Dornier sales representative, flew to Niger to get the President of Niger's approval of the contract. They flew to Niger and met with Captain Ali Tiemogo. Tiemogo was the chief of maintenance for the Niger Air Force. Tiemogo testified that during the trip, Liebo and Kurth told him that they would make "some gestures" to him if he helped get the contract approved. When asked whether this promise played a role in deciding to recommend approval of the contract, Tiemogo stated, "I can't say 'no', I cannot say 'yes', at that time," but "it encouraged me." Following Tiemogo's recommendation that the contract be approved, the President signed the contract.

Tahirou Barke, Tiemogo's cousin and close friend, was the first consular for the Niger Embassy in Washington, D.C. Barke testified that he met Liebo in Washington sometime in 1983 or 1984. Barke stated that Liebo told him that he wanted to make a "gesture" to Captain Tiemogo and asked Barke to set up a bank account in the United States. With Barke's assistance, Liebo opened a bank account in Minnesota in the name of "E. Dave," a variation of the name of Barke's then girl friend, Shirley Elaine Dave. Barke testified that NAPCO deposited about $30,000

in the account and that he used the money to pay bills and purchase personal items and that he gave a portion of the money to Captain Tiemogo.

Barke also testified that in August 1985 he returned to Niger to be married. After the wedding, he and his wife honeymooned in Paris, Stockholm and London. He testified that before leaving for Niger, he informed Liebo of his honeymoon plans, and Liebo offered to pay for his airline tickets as a gift. Liebo made the flight arrangements for Barke's return to Niger and for his honeymoon trip. Liebo paid for the tickets, which cost $2,028, by charging them to NAPCO's Diner's Club account. Barke testified that he considered the tickets a "gift" from Liebo personally.

We need not develop the record further other than to provide details of NAPCO's dealings with Niger and the Foreign Military Sales program. NAPCO received two other contracts from Niger. The second contract in the amount of $1,000,000 for the supply of spare parts and maintenance was signed on August 20, 1984. The third contract in the amount of $1,550,000 was signed on August 2, 1985.

Over a two and a half year period beginning in May 1984, NAPCO made payments totalling $130,000 to three "commission agents." The practice of using agents and paying them commissions on international contracts was acknowledged as proper, legal, and an accepted business practice in third world countries. NAPCO issued commission checks to three "agents," identified as Amadou Mailele, Tiemogo's brother-in-law, Fatouma Boube, Tiemogo's sister-in-law, and E. Dave, Barke's girl friend. At Tiemogo's request, both Mailele and Boube set up bank accounts in Paris. Neither Mailele, Boube, nor E. Dave, however, received the commission checks or acted as NAPCO's agent. Instead, evidence established that these individuals were merely intermediaries through whom NAPCO made payments to Tiemogo and Barke. Evidence at trial established that NAPCO's corporate president, Henri Jacob, or another superior of Liebo's approved these "commission payments." There was no evidence introduced at trial, however, that anyone approved the payment for the honeymoon trip.

To obtain Foreign Military Sales financing, NAPCO was required to submit a "Contractor's Certification and Agreement with Defense Security Assistance Agency." In the Contractor's certification submitted in connection with the third Niger contract, Liebo certified that "no rebates, gifts or gratuities have been given contrary to United States law to officers, officials, or employees" of the Niger government. Liebo certified that NAPCO's commission agent under the contract was Amadou Mailele and that he would be paid $47,662. Liebo also certified that no commissions or contingent fees would be paid to any agent to solicit or obtain the contract other than as identified in the certificate.

Following a three week trial, the jury acquitted Liebo on all charges [1] except the count concerning NAPCO's purchase of Barke's honeymoon airline tickets and the related false statement count. This appeal followed.

## I.

Liebo first argues that his conviction on Count VII for violating the bribery provisions of the Foreign Corrupt practices Act by giving Barke airline tickets for his

---

1. Liebo was acquitted at trial of conspiring to defraud the United States and to commit other offenses in violation of 18 U.S.C. § 371 (1988) (Count I); nine counts of violating the bribery provisions of the Foreign Corrupt Practices Act in violation of 15 U.S.C. §§ 78dd–1(a)(1) and (3) (Counts II–VI, VIII–XI), 78dd–2(a)(1) and (3), 78dd–2(b)(1)(B) (1988); one count of violating the accounting and record keeping provisions of the Foreign Corrupt Practices Act in violation of 15 U.S.C. § 78m(b)(2) and 78ff(a) (1988) (Count XII); three counts of aiding and assisting in the preparation of false corporate income tax returns in violation of 26 U.S.C. § 7206(2) (1988) (Counts XIII–XV); and three counts of making false statements to the Defense Security Assistance Agency (renumbered Counts XVI, XVIII–XIX), in violation of 18 U.S.C. § 1001 (1988). On the first day of trial, the district court granted the government's motion to dismiss Count XVI of the indictment, which charged Liebo with making a false statement to the Defense Security Assistance Agency, in violation of 18 U.S.C. § 1001.

honeymoon should be reversed because insufficient evidence existed to establish two elements of the offense. First, Liebo contends that there was insufficient evidence to show that the airline tickets were "given to obtain or retain business." Second, he argues that there was no evidence to show that his gift of honeymoon tickets was done "corruptly."

■ In reviewing the sufficiency of the evidence, we must consider the evidence in the light most favorable to the government with all reasonable inferences and credibility determinations made in support of the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Golter,* 880 F.2d 91, 94 (8th Cir.1989). The evidence to support a criminal conviction is sufficient if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown,* 763 F.2d 984, 989 (8th Cir.) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985) (emphasis in original). "[T]his court may overturn [a] verdict only if the evidence properly viewed is such that 'a reasonably minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense.'" *United States v. O'Connell,* 841 F.2d 1408, 1424 (8th Cir.) (quoting *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986)), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988).

There is sufficient evidence that the airplane tickets were given to obtain or retain business. Tiemogo testified that the President of Niger would not approve the contracts without his recommendation. He also testified that Liebo promised to "make gestures" to him before the first contract was approved, and that Liebo promised to continue to "make gestures" if the second and third contracts were approved. There was testimony that Barke helped Liebo establish a bank account with a fictitious name, that Barke used money from that account, and that Barke sent some of the money from that account to Tiemogo. Barke testified that he understood Liebo deposited money in the account as "gestures" to Tiemogo for some "of the business that they do have together."

Although much of this evidence is directly relevant to those counts on which Liebo was acquitted, we believe it appropriate that we consider it in determining the sufficiency of evidence as to the counts on which Liebo was convicted. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell,* the Court held that a defendant may not attack his conviction on one count solely because it is inconsistent with the jury's acquittal on another. *Id.* 469 U.S. at 69, 105 S.Ct. at 479. This is true even when the defendant has been convicted of a compound offense but acquitted of a predicate offense that is an element of the compound offense. *Id.* at 67–68, 105 S.Ct. at 477–78 (defendant convicted of using telephone in facilitation of conspiracy to sell drugs and possession of drugs, but acquitted of the conspiracy and possession charges). The Court noted that a criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence by the trial and appellate courts, which involves assessing whether the evidence "could support any rational determination of guilt beyond a reasonable doubt" and that this review is "independent of the jury's determination that evidence on another count was insufficient." *Id.* at 67, 105 S.Ct. at 478.

Moreover, sufficient independent evidence exists that the tickets were given to obtain or retain business. Evidence established that Tiemogo and Barke were cousins and best friends. The relationship between Barke and Tiemogo could have allowed a reasonable jury to infer that Liebo made the gift to Barke intending to buy Tiemogo's help in getting the contracts approved. Indeed, Tiemogo recommended approval of the third contract and the President of Niger approved that contract just a few weeks after Liebo gave the tickets to Barke. Accordingly, a reasonable jury could conclude that the gift was given "to obtain or retain business."

Liebo also contends that the evidence at trial failed to show that Liebo acted "corruptly" by buying Barke the airline tickets. In support of this argument, Liebo points to Barke's testimony that he considered the tickets a "gift" from Liebo personally. Liebo asserts that "corruptly" means that the offer, payment or gift "must be intended to induce the recipient to misuse his official position...." Sen.Rep. No. 114, 95th Cong., 1st Sess. 1, *reprinted in* 1977 U.S.Code Cong. & Admin.News 4098, 4108. Because Barke considered the tickets to be a personal gift from Liebo, Liebo reasons that no evidence showed that the tickets wrongfully influenced Barke's actions.

We are satisfied that sufficient evidence existed from which a reasonable jury could find that the airline tickets were given "corruptly." For example, Liebo gave the airline tickets to Barke shortly before the third contract was approved. In addition, there was undisputed evidence concerning the close relationship between Tiemogo and Barke and Tiemogo's important role in the contract approval process. There was also testimony that Liebo classified the airline ticket for accounting purposes as a "commission payment." This evidence could allow a reasonable jury to infer that Liebo gave the tickets to Barke intending to influence the Niger government's contract approval process. We conclude, therefore, that a reasonable jury could find that Liebo's gift to Barke was given "corruptly." Accordingly, sufficient evidence existed to support Liebo's conviction.[2]

## II.

■ Next, Liebo contends that his conviction should be reversed because the court erred by refusing to give his requested jury instructions distinguishing a "gift or gratuity" from a bribe.[3]

"A criminal defendant 'is not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction.'" *United States v. Wagner*, 884 F.2d 1090, 1096 (8th Cir.1989) (quoting *United States v. Manning*, 618 F.2d 45, 48 (8th Cir.1980)), *cert. denied*, — U.S. —, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). The trial court "has 'wide discretion in determining the appropriate jury instructions,' and its choices of particular instructions, may be reversed only for an abuse of discretion." *Wagner*, 884 F.2d at 1096 (citing *United States v. Shigemura*, 682 F.2d 699, 704–05 (8th Cir.)), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1982).

Here, the court instructed the jury that the term "corruptly" meant that "the offer, promise to pay, payment or authorization of payment, must be intended to induce the recipient to misuse his official position or to influence someone else to do so," and that "an act is 'corruptly' done if done voluntarily [a]nd intentionally, and with a bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means." Tr. at 166–67. Contrary to Liebo's argument, the instructions as a whole adequately instructed the jury that a gift or gratuity does not violate the Act unless it is given "corruptly." *Wagner*, 884 F.2d at 1096. *See also United States v. Montgomery*, 819 F.2d 847, 851–52 (8th Cir.1987). Accordingly, the court did not abuse its discretion by refusing to give the requested instruction.

## III.

■ Finally, Liebo argues that the district court erred in denying his motion for a new trial based on newly discovered evidence. Approximately two months after

---

**2.** Because we conclude that sufficient evidence existed to support Liebo's conviction on Count VII, we need not consider Liebo's argument that reversal of his conviction on Count VII mandates reversal of his related false statement conviction.

**3.** The instruction proffered by Liebo's counsel stated:

I have already instructed you that, in order for you to find that Element Three of any count has been established, you must find that the alleged payment was made "corruptly." I now instruct you that; if the making of a gift or gratuity is not done "corruptly," as that term is used in the Act, such action does not constitute the offense alleged in the relevant counts of the Indictment.

his conviction, a NAPCO employee provided Liebo with a memorandum showing Henri Jacob's approval to the charge of the airline tickets to NAPCO's Diner's Club Card. Liebo argues that the discovery of this evidence warrants a new trial.

■ This court has set forth a five-part test for granting a motion for new trial. All of the following criteria must be met:

(1) the evidence must be in fact newly discovered since the trial;

(2) facts must be alleged from which the court may infer diligence on the part of the movant;

(3) the evidence relied upon must not be merely cumulative or impeaching;

(4) it must be material to the issues involved; and

(5) it must be of such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Begnaud*, 848 F.2d 111, 113 (8th Cir.1988); *United States v. Bishop*, 825 F.2d 1278, 1284 (8th Cir.1987).

The district court concluded that Liebo satisfied elements (1), (2) and (4) of the above test. Sentencing Tr. at 21–24. The court denied Liebo's new trial motion, however, concluding that there was a weak showing on whether the evidence was merely cumulative or impeaching,[4] and that the evidence would probably not produce an acquittal. *Id.* at 22–24.

■ Motions for a new trial based on newly discovered evidence "are looked upon with disfavor." *United States v. Gustafson*, 728 F.2d 1078, 1084 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The denial of such a motion is within the trial court's broad discretion and will not be reversed absent a clear abuse of discretion. *Begnaud*, 848

F.2d at 113 (quoting *United States v. Massa*, 804 F.2d 1020, 1022 (8th Cir.1986)).

Liebo argues that the evidence was not cumulative or impeaching and "probably would have produced an acquittal." In support of this, Liebo notes that he was acquitted on all other bribery counts for which there was evidence that the payment in question was approved by Jacob or another superior. He contends that evidence of Jacob's approval was the determinative factor in the jury's verdict, pointing to a question sent out by the jury during their deliberations asking whether there was "[a]ny information regarding authorization for payment of wedding trip."[5]

The government argues that the district court correctly concluded that the evidence would probably not produce an acquittal. Although the government concedes that Liebo's counsel established that Jacob or another superior approved the seven commission payments underlying the acquitted bribery counts, the government contends that this evidence was "not significant" to Liebo's defense. The government states that Liebo's primary defense, exemplified in defendant's closing argument, was that he acted in good faith because he did not know that Amadou Mailele, Fatouma Boube, and E. Dave were not NAPCO agents or that the money was going to Tiemogo and Barke.

We do not place such significance on defendant's closing argument. This was a complicated thirteen-day trial involving nineteen charges. We cannot say that the evidence would not have led to an acquittal merely because it was not strenuously argued in defendant's closing argument. In addition, we note that defendant's closing argument did touch on the fact that Jacob signed numerous documents, that his "Mark of Zorro" could be seen all over the

---

4. The district court judge did not explain his reasons for concluding that a weak showing was made on whether the evidence was "merely cumulative or impeaching." Although there was testimony that no form existed for the approval of travel expenses, we are not aware of any other evidence that Jacob or another superior of Liebo's approved the expenditure for the airline tickets.

5. The jury's note read: "Any information regarding authorization for payment of wedding trip from Mailele account. If possible we would like some direction as to which Ex. # to look for."

The court answered: "Please look at the evidence you believe applicable and rely on your own recollection."

documents, and that Liebo relied on Jacob to obtain the agents.

Although reversal of a district court's denial of a new trial motion is rare, courts have granted a new trial based on newly discovered evidence especially when the evidence supporting a defendant's conviction is weak. *See, e.g., Newsom v. United States,* 311 F.2d 74, 79 (5th Cir.1962); *Ledet v. United States,* 297 F.2d 737, 739 (5th Cir.1962). As discussed in Part I, *supra,* the evidence against Liebo, while sufficient to sustain the conviction, was not overwhelming. Indeed, we believe that the company president's approval of the purchase of the tickets is strong evidence from which the jury could have found that Liebo acted at his supervisor's direction and therefore, did not act "corruptly" by giving the tickets to Barke. Furthermore, we are highly persuaded that the jury considered such approval pivotal, especially in light of the question it submitted to the court during its deliberations and its acquittal of Liebo on the other bribery counts in which evidence of approval existed. Accordingly, we hold that the district court clearly abused its discretion in denying Liebo's motion for a new trial. We remand for a new trial on counts VII and XVII.