**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Julius Christopher DOYLE, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thabit Yasir SALEEM, also known as Robert Doyle, Defendant–Appellant.**

Nos. 94–3838, 94–3906.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1995.

Decided July 19, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied in No. 94–3906 Aug. 24, 1995.

Douglas Peine, St. Paul, MN, Paul Engh, Minneapolis, MN, argued, for appellant Saleem.

Nathan Peterson, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

After Richfield, Minnesota, police arrested Bobby Brown for selling crack cocaine, Brown agreed to cooperate and introduced his source, Chris Doyle, to a new customer, undercover officer Melvin Ferguson. Over the next two weeks, Ferguson made quarter-ounce, two-ounce, and four-ounce purchases of crack cocaine from Doyle.

One month later, Doyle agreed to sell Ferguson twelve ounces of crack cocaine that Doyle said was then on its way from Chicago. That evening, Doyle joined Ferguson and told him to drive to a Burger King restaurant in St. Paul where Doyle's brother, Thabit Saleem, had previously arrived in Doyle's van. With the restaurant under close surveillance, Doyle delivered twelve ounces of crack cocaine to Ferguson in a scenario strongly suggesting participation by Saleem, who had arrived in the Twin Cities from Chicago earlier that day. Police arrested Doyle and Saleem and later found two firearms and two ounces of cocaine in the van and a firearm (bearing Saleem's thumb print), ammunition, and drug paraphernalia in Doyle's apartment.

Doyle and Saleem were tried together on an eight-count indictment charging them with drug and firearm offenses. Both were

convicted on all counts. Doyle was sentenced to 322 months in prison; Saleem to 101 months in prison. They appeal raising numerous issues, only two of which warrant discussion. We affirm.

■ 1. *Severance.* Saleem argues that the district court abused its discretion in denying his pretrial motion to sever. "[D]efendants who are jointly indicted on similar evidence from the same or related events should normally be tried together." *United States v. Oakie,* 12 F.3d 1436, 1441 (8th Cir.1993). Saleem argues that he suffered in the joint trial from "a serious spill over of guilt" because the government's case against Doyle was much stronger. Even if we agreed with this description of the evidence, it would not establish the "real prejudice" necessary to warrant severance, that is, "something more than the mere fact that [Saleem] would have had a better chance for acquittal had he been tried separately." *United States v. Adkins,* 842 F.2d 210, 211–12 (8th Cir.1988).

■ After closing arguments to the jury, counsel for Saleem renewed the motion for severance, explaining:

> Information has come to me that were he not a defendant in this case, Julius Doyle would take the stand and testify.... He would incriminate himself as to the charges brought against him. And he will exculpate fully his brother [Saleem]. That factual record supports a finding of prejudice from joinder....

It is relevant to a severance issue that a co-defendant would testify and exculpate the defendant seeking severance if separate trials were held. However, the government's case against Saleem was based primarily on what the surveilling officers saw transpire at the Burger King restaurant, plus the strong inference that Saleem was Doyle's cocaine source in Chicago. Even if Doyle would testify that Saleem was an innocent bystander at the Burger King, the district court could reasonably conclude that such testimony would not be truly exculpatory and therefore its untimely proffer did not justify the delay and expense of a second trial. *See United States v. Foote,* 920 F.2d 1395, 1399–1400 (8th Cir.1990), *cert. denied,* 500 U.S.

946, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991). In these circumstances, we conclude that the court did not abuse its discretion in denying Saleem's motion and renewed motion to sever.

■ Saleem further argues that the district court erred in denying his motion for new trial made over two months after his conviction. In support of that motion, Saleem submitted an affidavit from Doyle. Doyle averred that he would testify at a new trial and (i) identify his Chicago cocaine source; (ii) state that Saleem was not that Chicago source; and (iii) state that Saleem visited the Twin Cities to expand his legitimate business in Chicago and "had no direct knowledge of or participation in" Doyle's cocaine transactions. The district court did not abuse its discretion in denying this motion. Given the government's evidence at trial, it cannot be said that Doyle's proffered testimony "would probably produce an acquittal." *United States v. Freeman,* 942 F.2d 480, 483 (8th Cir.1991) (internal quotation omitted). Nor did Saleem's motion for new trial satisfy our rigorous criteria for the grant of this disfavored motion. *See United States v. Liebo,* 923 F.2d 1308, 1313 (8th Cir.1991).

■ 2. *Sentencing Entrapment.* Doyle argues that the district court erred in failing to find "outrageous government conduct in the form of sentence manipulation" because, when Bobby Brown agreed to cooperate, an FBI agent told him to arrange a controlled buy of at least five grams of crack cocaine. The agent admitted knowing that that quantity triggers a mandatory minimum five year prison sentence. *See* 21 U.S.C. § 841(b)(1)(B)(iii).

It was not "outrageous government conduct" for the agents to offer Brown leniency in exchange for cooperation only if the cooperation led to a more culpable drug dealer, such as Brown's source. By asking Brown to arrange a controlled buy of a substantial quantity of crack cocaine, the agents would have some assurance that Brown was in fact identifying a more culpable supplier. Moreover, all of the subsequent controlled purchases from Doyle exceeded the five gram minimum, except one quarter-ounce buy that

Doyle admitted to the undercover agent was a "little light." (A quarter-ounce is approximately 5.6 grams.) Brown was not involved in the later, substantially larger transactions. Nor is there evidence that Doyle was coerced or tricked into supplying large quantities. In these circumstances, his claims of entrapment and sentencing entrapment are without merit.

3. *Other Issues.* Doyle further argues that the district court erred in refusing to instruct the jury on entrapment as a defense to the drug trafficking charges, and in refusing to grant a mistrial when the prosecutor said in rebuttal closing argument that entrapment was not an issue in the case. Saleem further argues that there was a prejudicial variance because the indictment charged a thirty-day conspiracy and the evidence showed Saleem participating only the last day; that the evidence of guilt was insufficient as a matter of law; and that he should have been granted a two-point sentencing reduction because he played a minor role in the offenses. In a pro se supplemental brief, Saleem also argues that he was the victim of an unlawful warrantless arrest; that law enforcement officers testified falsely and inconsistently about details of events at the Burger King restaurant, and the prosecution knowingly used that false testimony; that the prosecution failed to disclose the non-incriminating results of some searches; that the prosecutor argued unfairly in closing; that the prosecution inaccurately edited a pretrial transcript in opposing Saleem's motion to set aside the jury verdict; and that he was not present at his arraignment in violation of Fed.R.Crim.P. 43. After careful review of the record pertaining to these contentions, we conclude that each is without merit.

The judgments of the district court are affirmed.