**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.

No. 97-4057

YVONNE L. PURNELL, a/k/a Yvonne
Anderson,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-96-252)

Argued: April 9, 1998

Decided: June 9, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and CHAMBERS, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Vincent L. Gambale, Assistant United States Attorney,
Alexandria, Virginia, for Appellant. Robert Stanley Powell, Arling-
ton, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, LeDora Knight, Assistant United States Attorney,
Alexandria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this case, the government appeals the district court's order of a
new trial for Yvonne L. Purnell pursuant to Fed. R. Crim. P. 33. The
court concluded that newly discovered evidence, not available to Pur-
nell during her original trial, warranted retrial. Finding no abuse of
discretion in this decision, we affirm.

I.

The "Section 8" rent subsidies program, administered by the
Department of Housing and Urban Development ("HUD"), provides
financial assistance to help low-income families afford housing. See
42 U.S.C. § 1437a. Purnell applied for and began to receive such
assistance in 1987. In annual recertification applications between
1988 and 1995, Purnell was required to report changes in her income
and the size of her household. Purnell reported on her applications the
births of two children but not her marriage in 1989 to Robert G.
Anderson, Jr. Apparently, the marriage was a tumultuous one. Ander-
son stayed in Purnell's home only for brief periods of time and pro-
vided no financial support other than occasional assistance for day
care. In 1995, local housing officials discovered Anderson's and Pur-
nell's marriage certificate and confronted her with it. Purnell later
withdrew from the Section 8 program.

The government then sought criminal charges against Purnell for
not disclosing her marriage or including Anderson's income in her
recertification applications between 1991 and 1995. A grand jury
indicted Purnell on one count of knowingly making a materially false
statement in a matter within HUD's jurisdiction in violation of 18
U.S.C. § 1001; five counts of knowingly making a false statement for
the purpose of influencing the action of HUD in violation of 18
U.S.C. § 1010; and five counts of knowingly presenting a false claim
to HUD in violation of 18 U.S.C. § 287.

2

From the time the indictment was returned, Purnell's attorney, Robert Stanley Powell, made several unsuccessful attempts to locate Anderson before the trial. He tried to telephone Anderson, but Anderson would not return the calls. He paged Anderson, who returned the page but hung up after discovering he was calling a law firm. Finally, he obtained a subpoena for Anderson, issued two weeks before the trial, but Anderson could not be located and served.

Trial commenced on August 28, 1996. The government presented the following evidence: Purnell had not disclosed her marriage to the housing authorities; she had listed Anderson's address to be the same as hers on her children's school records; Anderson briefly had received mail at Purnell's address; Purnell and Anderson had filed joint income tax returns between 1993 and 1995; and Anderson sometimes picked up Purnell's children from a neighbor who provided day care. At the close of the government's case, the trial judge granted Purnell's Rule 29 motion and dismissed three counts of the indictment relating to her 1991 recertification application. Purnell testified on her own behalf. She stated that Anderson stayed at her home for short periods of time but did not reside there; she also explained that she received no financial support from Anderson except occasional assistance for day care. Three of Purnell's friends testified that they were at her residence during various times and saw no indication that Anderson lived there. The jury found Purnell guilty of four counts of making a false statement to HUD and four counts of presenting a false claim to HUD.

After the trial but before sentencing, Powell finally spoke with Anderson. Anderson told Powell that he did not reside with Purnell during the times alleged by the government but only stayed at her home for brief periods of time. Instead, he resided with his mother or his sister during this entire period. Anderson also admitted that he provided Purnell no financial support other than some money for day care. Powell promptly filed a motion for a new trial based on this evidence. The same judge who had presided over Purnell's trial held a hearing on this motion; Anderson attended this hearing. At the close of the hearing, the judge reviewed this circuit's test for granting a new trial on the basis of newly discovered evidence and found that Anderson's proffered testimony satisfied it. He found that this testimony was "newly discovered since the trial;" that Powell's efforts to locate

3

Anderson constituted "diligence;" that "Mr. Anderson is one of the important people in this case to testify as to whether or not he did in fact live in the Section 8 housing;" that the testimony was "material;" and that "it may well produce an acquittal if the jury buys it." He then granted a new trial to Purnell. After the judge also denied the government's motion for reconsideration, the government filed this appeal.

II.

On a defendant's motion, a court may grant a new trial on the basis of newly discovered evidence. Fed. R. Crim. P. 33. Such grants should be rare. This circuit has applied a five-part test articulated in United States v. Bales to determine whether newly discovered evidence warrants a new trial:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

813 F.2d 1289, 1295 (4th Cir. 1987) (quoting Mills v. United States, 281 F.2d 736, 738 (4th Cir. 1960) (citation omitted)); accord United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995); United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), aff'd, 511 U.S. 485 (1994).

We review district court decisions about whether to grant a new trial for abuse of discretion. See Singh, 54 F.3d at 1190; United States v. Christy, 3 F.3d 765, 768 (4th Cir. 1993). Under this deferential standard, a reviewing court "may not substitute its judgment for that of the district court . . . [but] must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995) (citing James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993)). An appeals court may uphold the exercise of a trial court's discretion even when it might have ruled differently on the matter in the first

4

instance. District courts generally are in the best position to apply the Bales requirements and ascertain whether a new trial is warranted. They often are aware of the defense's efforts to obtain evidence and can determine whether those efforts constitute diligence. District courts also are most familiar with the evidence presented at trial and can best evaluate the exculpatory value of newly discovered evidence.

In this case, the government does not question the level of deference we accord to the district court's decision. Instead, it offers three arguments for why the district court abused its discretion in ordering a new trial.

First, the government argues that Anderson's proffered testimony was not newly discovered after trial but merely became newly available. It cites several decisions to support the proposition that newly available testimony does not provide a basis for ordering a new trial. E.g., United States v. Theodosopoulos , 48 F.3d 1438, 1448 (7th Cir. 1995); United States v. Muldrow, 19 F.3d 1332, 1339 (10th Cir. 1994). This line of cases is inapposite for at least two reasons. Initially, in several of these cases, the defense knew the content of the proposed testimony prior to trial. By contrast, in Purnell's case, Powell was able to speak with Anderson only after trial and, until that time, did not know how Anderson would testify. See United States v. Garland, 991 F.2d 328, 335 (6th Cir. 1993). Furthermore, in several of the cases on which the government relies, the unavailable witness was a nontestifying codefendant. Under those circumstances, such testimony is untrustworthy because a convicted codefendant might be trying "to assume the entire guilt." United States v. Montilla-Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997) (citing United States v. Alejandro, 527 F.2d 423, 428 (5th Cir. 1976)). This case does not raise that concern, as Anderson is not a codefendant. Thus, we agree with the district court that Anderson's proffered testimony qualifies as newly discovered.

Second, the government argues that Powell was not diligent in attempting to secure Anderson's appearance at trial. It identifies a number of additional steps that Powell might have taken such as requesting a continuance or offering the same evidence through alternative means. But Bales does not require the defense to prove that it did everything possible to secure the evidence before trial. It only

5

requires the defense to allege facts "from which the court may infer diligence." 813 F.2d at 1295 (internal quotations and citations omitted). After Purnell's indictment, Powell attempted to contact Anderson through a variety of means. He telephoned Anderson; he paged Anderson; he even obtained a subpoena for Anderson after his other efforts proved fruitless. The district judge expressly found these efforts constituted diligence, and we see no basis for overturning that finding.

Finally, the government argues that Anderson's proffered testimony would not be likely to result in an acquittal at a new trial. It contends that Anderson's testimony would not be exculpatory and that, even with this testimony, sufficient evidence in the original trial supported the verdict. However, the district judge, who presided over Purnell's trial and was intimately familiar with the evidence presented there, found that Anderson's testimony could well produce an acquittal. Our review of that finding "is anchored in an acknowledgment that the judge who tried the case is best equipped to examine the issue of whether the new evidence would likely result in an acquittal." United States v. Henry, 136 F.3d 12, 23 (1st Cir. 1998). Robert Anderson was at the center of this case. Much of the first trial focused on his residence and income, and both sides spent substantial time introducing evidence on these matters such as tax returns, school records, and testimony from Purnell's friends and one of her neighbors. Anderson's proffered testimony about his residence and extent of financial support appears largely to corroborate Purnell's own account at trial. His testimony thus "can supply evidence of vital importance and the only similar evidence at the trial was that of" Purnell herself. Amos v. United States, 218 F.2d 44, 44 (D.C. Cir. 1954). Therefore, a jury hearing this testimony might well conclude that Purnell had neither knowingly made false statements with the purpose of influencing the action of HUD nor knowingly submitted false claims to HUD. See Garland, 991 F.2d at 336; United States v. Liebo, 923 F.2d 1308, 1314 (8th Cir. 1991).

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

6