UNITED STATES of America, Appellee,

v.

Marlene PETERSON, Appellant.

UNITED STATES of America, Appellee,

v.

Allan SOLOMON, Appellant.

Nos. 82–1409, 82–1410.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1982.

Decided Dec. 16, 1982.

Rehearing Denied Feb. 1, 1983.

Thomas E. Dittmeier, U.S. Atty., Michael W. Reap, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Norman S. London, London, Greenberg & Fleming, St. Louis, Mo., for appellant Marlene Peterson.

Barry A. Short, Thomas M. Newmark, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant Allan Solomon.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Allan Solomon and Marlene Peterson appeal from a final judgment entered in the District Court for the Eastern District of Missouri[1] upon the bench's verdict finding them guilty of distributing cocaine, 21 U.S.C. § 841(a)(1) (1976), conspiring to distribute cocaine, 21 U.S.C. § 846, and travelling in interstate commerce with intent to promote the conspiracy to distribute cocaine, 18 U.S.C. § 1952. For reversal appellant Solomon argues that his indictments should have been dismissed because (1) the Drug Enforcement Administration (DEA) agents deprived him of his right to counsel; (2) the DEA's conduct in his case was an affront to the integrity of the courts and the Constitution; (3) his due process rights were infringed due to prosecutorial retaliation and vindictiveness; and (4) his constitutional and statutory rights to a speedy trial were abridged. Appellant Peterson argues that the government's delay in indicting both herself and Solomon violated her statutory right to a speedy trial and her fifth amendment due process rights. For the following reasons, we affirm the judgment of the district court.

The events leading to the arrest and indictment of appellants Solomon and Peterson are detailed fully in *United States v. Solomon,* 679 F.2d 1246, 1248–50 (8th Cir. 1982) (hereinafter referred to as *Solomon I*). The following statement of facts will suffice for purposes of this opinion.

On February 20, 1981, Solomon and Peterson were arrested for selling cocaine to undercover DEA agents earlier that day. After their arrests, Solomon was separated from Peterson and was urged to cooperate with the DEA. After he was told that the cocaine buyer was actually a DEA agent working undercover, Solomon agreed to cooperate. Solomon and Peterson were released at the same time without formal charges being filed against them. When she was released, Peterson was not aware that Solomon had consented to aid the DEA or that the cocaine buyer was an undercover DEA agent.

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

Even though Solomon had been read his *Miranda* rights, he asked the DEA agent in charge of the investigation whether he should get an attorney. The agent replied that Solomon could do what he wanted, but that if Solomon hired an attorney, further cooperation between the DEA and Solomon would be "difficult." A short time later, however, Solomon did retain counsel. One or two days after the DEA was informed that Solomon was represented by counsel, the DEA confiscated one of the two vehicles owned by Solomon that were used in the February 20 cocaine sale. Frightened by the DEA's actions, Solomon fired his attorney and thereafter continued his cooperation with the DEA.

After their arrest, Solomon was in close contact with Peterson. Solomon drove Peterson to her lawyer's office and sat outside the office in a waiting room while Peterson conferred with counsel about the February 20 arrest. Also during the period of his cooperation with the DEA, Solomon provided information which led to the arrest of five drug dealers. But, when one of Solomon's relatives was arrested based on information provided by Solomon, Solomon refused to cooperate any further and obtained counsel. Five days later, on May 5, 1981, the DEA filed criminal complaints against Solomon and Peterson, charging them with distribution of cocaine and ancillary crimes. On May 29, 1981, indictments were returned against Solomon and Peterson for their activities leading up to and including the February 20 cocaine sale to the DEA undercover agent.

## I. *The Solomon Appeal*

■ The arguments Solomon raises in this case were dealt with in *Solomon I*, at 1250–53. In that appeal the court held that although the government's actions were truly reprehensible and probably violated Solomon's sixth amendment right to counsel, the proper remedy for a sixth amendment violation is to suppress any evidence obtained from the violation. *Solomon I*, at 1250 & n. 7. Because no unconstitutionally obtained evidence was used against Solo-

mon, and Solomon could not otherwise prove that "the representation he received or the proceedings leading to conviction were adversely affected by virtue of the sixth amendment violation," the court refused to grant "the extraordinary remedy of dismissal." *Solomon I*, at 1250–51.

■ The *Solomon I* court also rejected appellant's contention that the government's conduct was so egregious that the indictments should have been dismissed as an exercise of the court's supervisory power to protect the integrity of the court and the Constitution. The court doubted that it could dismiss an indictment on such grounds absent a showing of prejudice to Solomon's defense. Solomon made no showing of prejudice. But, even if he had, the court would not have dismissed the indictment because there was no proof of "systematic and persistent abuse of power to support such a drastic remedy." *Solomon I*, at 1252–53 n. 12. These statements are fully applicable here.

■ Lastly, the *Solomon I* court concluded that because the evidence supported the district court's finding of no vindictive animus on the part of the prosecutor, Solomon's claim of prosecutorial vindictiveness must fail. *Solomon I*, at 1252 n. 12. We concur and adopt the same conclusion in this case.

## II. *Speedy Trial Claims*

■ *Solomon I* also disposes of both Solomon's and Peterson's Speedy Trial Act claims, 18 U.S.C. §§ 3161–74 (1976). *Solomon I* held that the thirty-day arrest-to-indictment time limit does not commence until there is a pending criminal charge. *Solomon I*, at 1252 & 1253. *See* 18 U.S.C. §§ 3161(b), 3162. Thus, the time from Solomon's and Peterson's initial arrests on February 20, 1981, until formal charges were filed by way of complaint on May 5, 1981, cannot be counted in the thirty-day limit. Solomon and Peterson were not "charged with an offense" until May 5 and were indicted less than thirty days later on May 29, 1981. There was no violation of the Speedy Trial Act.

The same rationale can be applied to Solomon's speedy trial clause claim. U.S. Const. amend. VI. After *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982), "the speedy trial clause affords no protection during a period that charges are not pending." *Solomon I,* at 1252.

### III. *Peterson's Appeal*

Peterson makes the additional argument that the preindictment delay, and the government's actions during that delay, violated her fifth amendment right to due process. *See United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). Peterson claims that the DEA coerced Solomon into becoming an informer by violating Solomon's sixth amendment right to counsel and that as a result of this coercion, Solomon might have informed the prosecution of her trial strategy. Peterson also contends that by not indicting Solomon within thirty days of his arrest on February 20, the government kept Solomon "on a string", thereby enabling the government to obtain information from Solomon's cooperation that it would not have been able to obtain had Solomon been indicted thirty days after his arrest in accordance with the Speedy Trial Act. By having a "spy in her camp" for longer than the "allowable" thirty-day limit of the Speedy Trial Act, Peterson argues, her ability to mount an effective defense was compromised.

■ Peterson's due process claim must fail for two principal reasons: (1) she has not proven that the government acted in bad faith, *see United States v. MacDonald,* 102 S.Ct. at 1503 n. 12, and (2) she has not proven that the reasonable thirty-seven day pre-indictment delay prejudiced her defense, *see United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977).

### A. Bad Faith

■ Peterson's allegations of bad faith are without merit. First, we doubt that Peterson has standing to assert Solomon's sixth amendment right to counsel. *Cf. United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Tropiano v. United States,* 323 F.Supp. 964, 966 (D.Conn.1971). Second, the Speedy Trial Act does not require indictment until thirty days after formal charges are pending. As discussed above, the Speedy Trial Act was comported with fully in this case. Third, the government released Peterson contemporaneously with Solomon without formally charging her or seeking an immediate indictment against her, in order to protect Solomon's integrity as a DEA informant. Had Peterson been charged or indicted while Solomon was released without charges, suspicions would have been aroused and Solomon would have been rendered useless as an informer. Pre-indictment delay to protect an informer's identity as such, rather than to gain a tactical advantage over the defendant, is not evidence of bad faith. *United States v. Rodgers,* 639 F.2d 438, 440–41 (8th Cir.1981) (eight-month pre-indictment delay).

### B. Prejudice

There is no evidence in the record that Solomon gave the DEA information concerning Peterson's trial strategy. When Solomon accompanied Peterson to her lawyer's office, he merely drove her to the office and waited for her in another room while Peterson talked with her attorney. Nothing in the record indicates that Solomon was privy to the conversation between Peterson and her lawyer.

Accordingly, we affirm the judgment of the district court in both Peterson's and Solomon's cases.