**UNITED STATES of America, Appellee,**

v.

**Richard John LaFUENTE, also known as Ricky LaFuente, Appellant.**

No. 91–3342.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1992.

Decided April 19, 1993.

Jonathan T. Garaas, Fargo, ND, argued, for appellant.

Dennis D. Fisher, Asst. U.S. Atty., Fargo, ND, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and LARSON,* Senior District Judge.

WOLLMAN, Circuit Judge.

Richard J. LaFuente appeals from the district court's denial of his motion for a new trial based on allegations of newly discovered evidence and prosecutorial misconduct. We vacate the district court's order and remand for an evidentiary hearing.

## I.

This case comes before us for the sixth time in as many years. On August 28, 1983, Jerome Edward ("Eddie") Peltier was found dead on Highway 57 near Ski Jump Road on the Devils Lake Indian Reservation in North Dakota. An autopsy revealed that Peltier had died as a result of being run over by a motor vehicle. Although law enforcement authorities suspected foul play from the beginning, their investigation was unproductive for nearly two years. Beginning in July 1985, however, the authorities were able to obtain statements from several individuals who had witnessed the events surrounding Eddie Peltier's death. On January 9, 1986, the government indicted eleven individuals for their involvement in Eddie Peltier's death.

On April 14, 1986, a six-week jury trial commenced against the eleven defendants. The government presented four primary witnesses: Patricia DeMarce, Shirley Greywater, Mary McDonald, and Fred Peltier. According to these witnesses, Eddie Peltier attended a party at Bernice Cavanaugh Juarez's residence the morning he was killed. He was involved in several confrontations at the party. These confrontations escalated to the point where the defendants chased Eddie Peltier to nearby Highway 57, beat him, and left him lying on the highway, where LaFuente drove over him

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

with his automobile. For a fuller recitation of the facts, see *United States v. Grey Bear*, 828 F.2d 1286, 1288, 1293–96 (8th Cir.1987) (*"Grey Bear I"*).

On May 21, 1986, LaFuente was convicted of first-degree murder and sentenced to life in prison. In *Grey Bear I*, we held the evidence was sufficient to support the conviction, but we reversed the conviction on the ground of prejudicial misjoinder and ordered a new trial. *Id.* at 1294, 1299. On rehearing en banc, an equally divided court affirmed the district court's ruling that joinder was proper, thus reinstating LaFuente's murder conviction. *United States v. Grey Bear*, 863 F.2d 572 (8th Cir.1988) (en banc). We subsequently rejected LaFuente's other challenges to his conviction. *United States v. Grey Bear*, 883 F.2d 1382 (8th Cir.1989), *cert. denied*, 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).[1]

Based on allegations of newly discovered evidence and prosecutorial misconduct, LaFuente moved for a new trial. Without conducting an evidentiary hearing, the district court filed a memorandum and order denying the motion. This appeal followed.

## II.

### A. Newly Discovered Evidence

 We first examine LaFuente's contention that he is entitled to a new trial because of newly discovered evidence. We look upon motions for a new trial based on newly discovered evidence with disfavor. *See, e.g., United States v. Liebo*, 923 F.2d 1308, 1313 (8th Cir.1991) (quoting *United States v. Gustafson*, 728 F.2d 1078, 1084 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984)). Accordingly, we have adopted a stringent five-part test for granting such motions. All of the following requirements must be met:

(1) the evidence must be in fact newly discovered since the trial;

(2) facts must be alleged from which the court may infer diligence on the part of the movant;

(3) the evidence relied upon must not be merely cumulative or impeaching;

(4) it must be material to the issues involved; and

(5) it must be of such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Id.* The grant or denial of a motion for a new trial based on newly discovered evidence is within the trial court's broad discretion, and we will reverse a trial court's decision only if we find a clear abuse of discretion. *Id.*

LaFuente's motion alleged that he should be granted a new trial based upon the following items of newly discovered evidence: (1) Shirley Greywater's allegation of judicial misconduct; (2) Greywater's recantation; (3) Greywater's allegations of police misconduct; (4) John Wells's alleged testimony; (5) Linda Alberts's alleged testimony; and (6) Kevin Mindt's alleged testimony.

### 1. *Shirley Greywater's allegation of judicial misconduct.*

Since the trial, Shirley Greywater has given two sworn statements: one on April 20, 1988, and another on December 29, 1989. On the basis of Greywater's second statement, LaFuente alleges that Greywater, without her attorney present, attended ex parte chambers conferences between the government and the district court. LaFuente asserts that Greywater was told at

---

**1.** Of the remaining ten defendants, the jury found nine guilty of second-degree murder and one guilty of assault. The jury also convicted several defendants of witness tampering and perjury. *Grey Bear I*, 828 F.2d at 1288. The second-degree murder conviction of one of the defendants was ultimately affirmed. The remaining eight second-degree convictions were reversed for lack of evidence. For an account of the defendants' appeals, see *Grey Bear I*, 828

F.2d 1286; *United States v. Grey Bear*, 836 F.2d 1086 (8th Cir.1987) (*"Grey Bear II"*); *United States v. Grey Bear*, 863 F.2d 572 (8th Cir.1988) (en banc) (*"Grey Bear III"*); *United States v. Grey Bear*, 883 F.2d 1382 (8th Cir.1989) (*"Grey Bear IV"*), *cert. denied*, 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *United States v. Cavanaugh*, 948 F.2d 405 (8th Cir.1991) (*"Grey Bear V"*).

these conferences that she would be placed in jail if she spoke to defense lawyers or the press. The government vehemently denies that any such ex parte proceedings ever occurred. In its order, the district court did not make any express finding on this allegation.

■■■ We acknowledge that a district court has broad discretion in deciding whether to hold an evidentiary hearing on a motion for a new trial based on newly discovered evidence. *See, e.g., United States v. Begnaud*, 848 F.2d 111, 113–15 (8th Cir.1988). This type of motion can ordinarily be decided upon affidavits without a hearing. *Id.* There are cases, however, in which an evidentiary hearing should be held, *see, e.g., United States v. Massa*, 804 F.2d 1020, 1023 (8th Cir.1986), and we believe that this case falls into that category. LaFuente has made a serious allegation concerning the district court. The government denies the allegation, but has not offered any affidavit to refute it. Accordingly, we must remand this case to the district court with directions that it hold an evidentiary hearing to determine whether any such ex parte conferences occurred.[2] If the court finds that any ex parte conferences did occur, it must then determine whether the nature of those conferences was such that LaFuente's due process right to a fair trial was violated.

### 2. Greywater's recantation.

In both of her post-trial statements, Greywater also recanted her trial testimony, claiming that she had lied at trial about being at the Juarez party. Without stating whether it found Greywater's recantation credible, the district court concluded that her recantation did not satisfy all the requirements of *Liebo*'s five-part test. Neither rejecting nor endorsing the district court's determination, we direct the court to review this finding after it has held the evidentiary hearing and has made findings on LaFuente's allegations of newly discovered evidence—none of which the district

court addressed when it initially considered LaFuente's motion.

### 3. Greywater's allegations of police misconduct.

Again based on Greywater's sworn statements, LaFuente alleges that Greywater testified falsely at trial because two law enforcement officers had threatened her. LaFuente further alleges that one of these officers also provided Greywater with information so that her testimony could be consistent with other testimony.

### 4. John Wells's alleged testimony.

Without stating the source of this allegation, LaFuente alleges that in a new trial John Wells would provide testimony that impeaches Mary McDonald's testimony and corroborates LaFuente's trial position concerning his whereabouts at pertinent times.

### 5. Linda Alberts's alleged testimony.

Based on the notes of investigator Ross Rolshoven's interview with Linda Alberts, LaFuente asserts that Alberts was on Ski Jump Road near the Juarez residence at 5:46 on the morning of Eddie Peltier's death. LaFuente maintains that Alberts would testify that she did not see anyone or anything near the Juarez residence except a red stationwagon. LaFuente contends that her testimony would thereby establish that Eddie Peltier could not have been killed in the manner the government claims he was.

### 6. Kevin Mindt's alleged testimony.

On the basis of Rolshoven's interview with Kevin Mindt, LaFuente alleges that Mindt would testify that he was pressured by the federal government to testify falsely at trial that he had been at the Juarez party. (We note, however, that Mindt was not called to testify at trial.) According to LaFuente, Mindt would further testify that Fred Peltier had also been pressured into coming up with a story and that Peltier and Patricia DeMarce had felt compelled to tes-

---

**2.** We note that the judge who initially heard LaFuente's motion for a new trial and will hear the case on remand is not the same judge whom LaFuente accuses of misconduct.

tify as they did because of the money the government had paid them.

On remand, we direct the district court to first determine which of these allegations, if any, are credible. *See United States v. Coleman,* 460 F.2d 1038, 1040 (8th Cir.) (stating that on a motion for a new trial based on newly discovered evidence it is the trial court's function to determine the credibility of evidence), *cert. denied,* 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972); *Connelly v. United States,* 271 F.2d 333, 335 (8th Cir.1959) (same), *cert. denied,* 362 U.S. 936, 80 S.Ct. 755, 756, 4 L.Ed.2d 750 (1960). If the court finds that any of LaFuente's allegations are credible, it must then apply to them the five-part test for newly discovered evidence.

On appeal, LaFuente attempts to raise additional allegations of newly discovered evidence by recharacterizing some of his prosecutorial misconduct claims as newly discovered evidence claims. Because these claims were not raised below, we will not consider them here.

## B. Prosecutorial Misconduct

We now turn to LaFuente's contention that he should be granted a new trial because he was denied due process because of prosecutorial misconduct.

### 1. *Violation of Greywater's right to counsel.*

■ LaFuente alleges that the government violated Greywater's constitutional right to effective assistance of counsel and thereby deprived him of due process. Although the district court did not address this claim, we do so here because it can be disposed of as a matter of law. LaFuente cannot maintain this claim because he lacks standing "to assert the infringement of a third party's sixth amendment rights." *United States v. Leisure,* 844 F.2d 1347, 1359 (8th Cir.) (citing *United States v. Peterson,* 698 F.2d 921, 924 (8th Cir.1983)), *cert. denied,* 488 U.S. 932, 960, 109 S.Ct. 324, 403, 102 L.Ed.2d 342, 392 (1988).

### 2. *Failure to disclose exculpatory evidence.*

■ LaFuente next alleges that he was denied due process because the government failed to disclose exculpatory evidence to him. In *Brady v. Maryland,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). In *United States v. Bagley,* the Supreme Court defined materiality as follows: "[E]vidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). This definition of materiality applies whether the defendant has made no request, a general request, or a specific request for exculpatory information. *Id.* Likewise, this same materiality definition applies to both exculpatory evidence and impeachment evidence. *Id.* at 676–77, 105 S.Ct. at 3380–81; *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

In his motion, LaFuente alleged that the government had failed to disclose the following favorable evidence.

(a) Based on Greywater's December 29, 1989 statement, LaFuente alleges that the government failed to provide him with copies of two exculpatory interviews that occurred prior to trial: one between Greywater and law enforcement officer Ken Morsette and another between Greywater and officer Peter Belgarde. Greywater asserted that she had told both officers that she knew nothing about Eddie Peltier's death.

(b) Also on the basis of Greywater's December 29 statement, LaFuente alleges that the government failed to provide him with information that Patricia DeMarce

had fabricated her testimony to accommodate the trial testimony of other witnesses.

(c) LaFuente alleges that the government failed to provide him with a transcript of Rolshoven's interview with Linda Alberts. As discussed earlier, LaFuente alleges that Alberts provided Rolshoven with information that indicates that Eddie Peltier could not have been murdered in the manner that the government asserts he was.

The district court did not address these three allegations in its order. On remand, the district court should determine whether LaFuente's alleged evidence, if it in fact existed, is material under *Bagley*.

Just as he attempts to raise additional allegations of newly discovered evidence on appeal by recharacterizing claims of prosecutorial misconduct, LaFuente also tries to raise additional allegations of inadequate disclosure by recasting claims of newly discovered evidence. Again, we will not consider these newly-raised claims on appeal.

### 3. *Improper use of subpoenas.*

LaFuente argues that the government violated the Federal Rules of Criminal Procedure by wrongfully using trial subpoenas to command potential trial witnesses to attend pretrial conferences.

█ The practice of using trial subpoenas to compel witnesses to attend pretrial conferences is improper under Rule 17 of the Federal Rules of Criminal Procedure.[3] Several courts have interpreted Rule 17 to permit a subpoena to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials. *See United States v. Keen*, 509 F.2d 1273, 1274–75 (6th Cir.1975); *United States v. Hedge*, 462 F.2d 220, 222–23 (5th Cir. 1972); *United States v. Standard Oil Co.*, 316 F.2d 884, 897 (7th Cir.1963). The gov-

ernment may not use trial subpoenas to compel prospective trial witnesses to attend pretrial interviews with government attorneys. *Id.*

In its brief and at oral argument, the government acknowledged that it had used trial subpoenas to compel witnesses to attend pretrial conferences in this case. At oral argument, we instructed the government to ascertain whether there are documents, in addition to those already in the record, concerning the pretrial examination of witnesses. We ordered that any such additional documents be provided to us. Since oral argument, the government (and LaFuente) have submitted copies of numerous documents: docket sheets, subpoenas, and payment vouchers. From these additional documents and those originally in the record, we have found that the government issued at least twelve subpoenas commanding witnesses to appear prior to trial at the United States Courthouse in either Grand Forks or Fargo, North Dakota.

█ A court should reverse a conviction for prosecutorial misconduct only if the improper conduct so prejudiced the defendant that he was unable to obtain a fair trial. *See, e.g., Carlson v. State*, 945 F.2d 1026, 1029 (8th Cir.1991) (citing *United States v. Baker*, 855 F.2d 1353, 1363 (8th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989)). In determining the prejudicial effect of prosecutorial misconduct, we examine the cumulative effect of all misconduct. *Cf. United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir.1985) (stating the factors that this court considers when determining the prejudicial effect of prosecutorial misconduct).

LaFuente argues that the government's inappropriate use of the subpoena power prejudiced him in two ways. First, he maintains that the government used these pretrial conferences to resolve discrepancies in the testimony of various witnesses.

---

3. Rule 17(a) of the Federal Rules of Criminal Procedure provides in pertinent part:

A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person

to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.

He asserts that if the government had not held these pretrial conferences, his trial counsel and counsel for the other defendants could have more effectively cross-examined key government witnesses. Second, he claims that the government used the pretrial conferences to coerce potential defense witnesses into not testifying favorably for the defendants.

When LaFuente's motion was before the district court, only six of the pretrial subpoenas were in the record.[4] The government offered the district court an explanation for each of the six subpoenas. After examining the government's explanations, the district court concluded that the government's use of the subpoena power had not deprived LaFuente of due process. Without ruling on the propriety of this finding, we direct the district court to reexamine this issue in the light of the additional documents submitted to this court. In particular, the district court should first make a finding as to how many individuals were improperly subpoenaed for pretrial conferences with the government and then make a determination as to the prejudicial consequences, if any, of those conferences.

### 4. *Improper payment of witness fees.*

 LaFuente next asserts that the government improperly paid witnesses to appear at pretrial conferences. LaFuente maintains that under the laws in effect at the time, the government was authorized to pay witnesses for appearing at court proceedings, but not for appearing at pretrial conferences.

The government, on the other hand, admits that it paid prosecution witnesses to appear at pretrial conferences. The government asserts, however, that these payments were lawful. The government maintains that 28 U.S.C. § 1821 and 28 C.F.R. pt. 21 authorized it to pay fees and allowances not only to witnesses for their grand jury and trial testimony, but also to prospective prosecution witnesses who voluntarily appeared for preparation at pretrial interviews.

Although the district court did not take issue with the government's claim that it had paid only lawful, authorized fees, we believe that the government's assertion is incorrect. At the time these payments were made (January 13 to April 8), Title 28 U.S.C. § 1821 provided:

> Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

Nothing in section 1821 authorized the government to pay fees and allowances to witnesses appearing at pretrial conferences with government attorneys in this case.

Similarly, 28 C.F.R. pt. 21 also did not authorize the government to pay nongovernment employee witnesses for appearances at pretrial conferences. The version of part 21 in effect prior to April 21, 1986, provided regulations for paying fees only to federal government employees serving as witnesses and nongovernment employees appearing as witnesses in the District of Alaska. *See* 28 C.F.R. pt. 21 (1985). Of the witnesses paid in this case, apparently only Peter Belgarde was a government employee when he was paid witness fees. We observe, however, that on April 21, 1986, one week after LaFuente's trial commenced, 28 C.F.R. pt. 21 was amended. The amended version permits the government to pay witness fees to nongovernment employees for appearing at pretrial conferences. *See* Witness Fees, 51 Fed.

---

**4.** At that time, the record indicated that the following individuals had been subpoenaed on the following dates: Fred Peltier on January 24, 1986; Kenneth DeMarce on January 24, 1986; Patricia DeMarce on January 24, 1986; Kenneth Morsette on January 28, 1986; Mark Jackson, D.D.S. on January 31, 1986; and Mary McDonald on February 12, 1986.

The record did not indicate that the following individuals had also been subpoenaed for pretrial conferences on March 24, 1986: Bill Byram, Jeanne Charboneau, Bruce McKay, John Peltier, Roger Yankton, and Don Zeigler.

Reg. 16,171 (1986) (codified at 28 C.F.R. pt. 21).

The payment vouchers submitted by the government to us after oral argument demonstrate that of the twelve individuals whom the government subpoenaed prior to trial, seven were paid fees for meeting with the government.[5] Additionally, these payment vouchers indicate that on at least nine other occasions nongovernment employees voluntarily[6] appeared for pretrial conferences and were paid for their appearances.[7] LaFuente contends that these payments amounted to paying for witnesses and testimony. He maintains that witnesses believed that they had an obligation to testify as the Government desired because of the payments they had received. On remand, the district court should determine whether these improper payments prejudiced LaFuente to the extent that he did not receive a fair trial.

### III.

In his briefs to this court, LaFuente raises two additional issues that were not raised in district court. We normally do not consider issues raised for the first time on appeal. Nevertheless, because we directed the government at oral argument to submit additional documents to us, we address the issues raised and clarified by those supplemental documents.

### A. Material Witness Warrants

According to documents in the supplemented record, on January 2, 1986, the government filed a brief and an affidavit requesting material witness warrants for Patricia and Kenneth DeMarce pursuant to 18 U.S.C. § 3144. A United States magistrate judge issued the warrants, and the DeMarces were arrested that day. The magistrate judge placed them under a bond and set the conditions of their release, restricting their travel and placing them in a pretrial services facility. Upon the government's request, the magistrate judge sealed all documents relating to the DeMarces' material witness warrants. On January 13, 1986, the government moved to quash the DeMarces' warrants and release them from the conditions of their bond. The government informed the court that the pretrial services facility was too restrictive for the DeMarces and that more appropriate arrangements had been made for them to live with relatives outside of North Dakota. On January 15, 1986, the court granted the government's motion and ordered that the documents concerning this matter remain sealed.

In his reply brief, LaFuente alleges for the first time that the government improperly secured the DeMarces' material witness warrants. He maintains that the government's request for the warrants did not meet the requirements of 18 U.S.C. § 3144[8] because the affidavit and other supporting materials filed by the government were deficient and it was not impracticable for the government to secure the presence of the DeMarces by subpoena. After carefully reviewing the relevant documents (some of which did not come to light until after this case was argued), we find that the government met the requirements of section 3144. Likewise, having examined the documents issued by the magistrate judge, we find, contrary to La-

---

5. Fred Peltier on January 23–27, 1986; Jeanne Charboneau on March 24, 1986; Bruce McKay on March 24, 1986; John Peltier on March 24, 1986; Roger Yankton on March 24, 1986; Don Zeigler on March 24, 1986; and Bill Byram on April 1–2, 1986.

6. Apparently their appearances were voluntary; there is nothing in the record to indicate that they were subpoenaed.

7. Kenneth DeMarce on January 13, 1986; Patricia DeMarce on January 13, 1986; Fred Peltier on January 13–15, 1986; Shirley Greywater on January 23, 1986, and April 2, 1986; Mary McDonald on April 1, 1986; Tony McDonald on January 31, 1986, and April 1, 1986; and Vina McDonald on January 31, 1986.

8. In January 1986, Section 3144 provided in pertinent part:

 If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142.

Fuente's assertion, that the magistrate judge complied with section 3142 in setting the conditions of release for the DeMarces.[9]

LaFuente further asserts that at trial none of the defendants knew about these material arrest warrants because they were obtained by the government ex parte and then sealed. At oral argument, LaFuente contended that he became aware of these documents only on February 20, 1992, when the government mentioned them in its brief to this court. LaFuente complained that the defendants had no knowledge of or access to the sealed documents because they were not referenced in the district court docket sheets for the *Grey Bear* case. The government responded that the sealed documents were in the district court file for the *Cavanaugh* case, which was superseded by this case. The government admitted that these documents had been sealed from the public, but maintained that LaFuente's trial counsel could have acquired access to them upon request to the district court clerk's office. We ordered the government to submit to us the *Cavanaugh* case docket sheets. On October 22, 1992, the government submitted the *Cavanaugh* docket sheets to us, but we found that they do not reference the DeMarces' material witness warrants as the government had claimed they do. On November 3, the district court clerk's office finally discovered the docket sheets referencing the DeMarces' material witness warrants. The clerk's office explained that the docket sheets and documents relating to the warrants were in a sealed *Grey Bear* case file kept separate from the public *Grey Bear* file. The district court then issued an order allowing LaFuente access to the sealed files on November 3, 1992.

LaFuente claims that knowledge of the material witness arrest warrants is material because if he and his co-defendants had known about them, they could have more effectively cross-examined Patricia DeMarce. On remand, the district should determine if these documents were in fact

unavailable to LaFuente at the time of his trial, and if so, whether the government had an obligation to disclose them to LaFuente under *Bagley*.

## B. Nondisclosure of Witnesses Under Protective Custody

LaFuente also argues that he was prejudiced by the government's failure to disclose that Fred Peltier, Kenneth DeMarce, and Patricia DeMarce were kept under protective custody for two and one-half months prior to trial.

The government placed Fred Peltier, Kenneth DeMarce, Patricia DeMarce, and the DeMarces' two children under protective custody in late January 1986. On January 27, 1986, an FBI agent from North Dakota requested $3600 from the FBI office in Minneapolis, Minnesota, to feed and lodge these five individuals for one month. The request stated that these witnesses had received death threats and that the U.S. Attorney's Office in Fargo, North Dakota, had requested that they be provided protection because they could not safely reside in their home. The request also said that the "three adult witnesses are totally without funds and for the past month have relied totally on witness fees provided by the United States Marshal's Service, with cooperation of the United States Attorney's Office." Memorandum from FBI Special Agent Spencer L. Hellekson to the Minneapolis, Minnesota FBI Office (January 27, 1986). On January 28, the FBI granted the request and issued $3600 to the United States Marshal's Office in North Dakota. Field Support Account Blue Slip signed by FBI Special Agents Kenneth M. Aldridge and Lawrence G. Lawler (January 28, 1986). One month later, the FBI authorized another $3600 payment to pay for the witnesses' expenses from February 28 to April 14, 1986, the beginning of the trial. Field Support Account Blue Slip signed by FBI Special Agents Kenneth M. Aldridge and Lawrence G. Lawler (February 28, 1986). Of the $7200, $6720 was used; the

---

**9.** Title 18 U.S.C. § 3142 outlines the procedures for releasing and detaining witnesses charged with an offense.

rest was returned to the FBI. Letter from Thomas R. Vokes, Chief Deputy United States Marshals Service for the District of North Dakota, to Shirley Poppe, FBI, Minneapolis, Minnesota (April 11, 1986).

On remand, the district court must determine whether the government disclosed to LaFuente that these witnesses had been under protective custody and had received financial aid prior to trial and, if it did not, whether that evidence is material. *Compare with United States v. Montoya*, 952 F.2d 226, 227 (8th Cir.1991) (holding that the government's failure to disclose that it had paid a witness was not material); *United States v. Librach*, 520 F.2d 550, 553–54 (8th Cir.1975) (holding that the government's failure to disclose that a witness had been under protective custody and had been paid a monthly subsidy prior to trial might have affected the jury's judgment).

This has been a protracted case. We do not lightly burden the district court with the task it faces on remand. We are confident that the district court will cut through to the substance, if any, of LaFuente's numerous claims, including those that he has attempted to raise on appeal. To assist the district court in this arduous task, the parties would be well advised to abandon the inflammatory rhetoric that has characterized their briefs and arguments and present in a straightforward manner their respective positions and their substantiating evidence.

The order denying the motion for new trial is vacated, and the case is remanded to the district court for further proceedings in accordance with this opinion.